**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| JAMES ANTHONY RAINONE, | No. CV 18-5086-GW (PLA) |
| Plaintiff, | |
| v. | **ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |
| Dr. D. PAZ, et al., | |
| Defendants. | |

On June 8, 2018, plaintiff filed in this Court a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983, and an accompanying Memorandum in Support of § 1983 Complaint. He was subsequently granted leave to proceed *in forma pauperis*. (ECF Nos. 1, 2, 5). Plaintiff, a prisoner housed in California State Prison, Sacramento, names as defendants five prison staff members located at California State Prison, Lancaster ("CSP-Lancaster"): Dr. Paz, a psychologist; W.D. Jackson, a correctional officer; Sgt. D. Perez, a correctional officer; K. Graves, a correctional lieutenant; and Burns, a correctional counselor. (ECF No. 1 at 3-4).

Plaintiff in the Complaint purports to be raising three claims arising out of an assault by another inmate that occurred when plaintiff was housed at CSP-Lancaster. (See ECF No. 2). Specifically, he makes the following allegations: at all relevant times, prison staff was "fully and completely" aware of the fact that plaintiff is a bisexual inmate. On or about April 2017, plaintiff

began asking defendant Dr. Paz to reschedule plaintiff's EOP therapy group so that plaintiff could avoid being in the same group session as Inmate Woodward, as Inmate Woodward had been making threats of violence against plaintiff as well as harassing plaintiff based on his sexual orientation. (ECF No. 2 at 2-3). Dr. Paz told plaintiff to "man-up and just deal with it," and failed to report the threats as required. Plaintiff also talked to defendant Graves and reported his concerns regarding Inmate Woodward's threats of violence. Plaintiff told defendant Graves that Inmate Woodward "attempted on several occasions to gas [ ] plaintiff in the ad-seg yard cage."[1] (Id. at 3). Defendant Graves told plaintiff that "she couldn't do anything until he had actually been assaulted." (Id.). On April 12, 2017, plaintiff sent a written complaint (on a "CDCR 22 form") to defendant Graves expressing his safety concerns after Inmate Woodward had exhibited intimidating behavior. (Id.). On several occasions in April 2017, plaintiff spoke to defendant Perez and asked to be placed in a separate group from Inmate Woodward due to the harassment. (Id. at 4). Defendant Perez "simply laughed and told plaintiff that [it] was a part of prison life," and that the issue would be addressed only if Inmate Woodward actually carried out an assault on plaintiff. (Id.). On April 18, 2017, plaintiff submitted a CDCR 22 form to defendant Burns regarding his safety concerns. Defendant Burns told plaintiff that, until a "physical attempt" was committed, nothing could be done to address plaintiff's concerns. (Id.). Plaintiff "attempted to submit 602 grievances on this matter but they kept either coming up missing or never getting processed." (Id.). On two occasions, defendants Perez and Graves threw away plaintiff's grievance forms in front of plaintiff. (Id.). On May 3, 2017, plaintiff filed a CDCR 22 form to have defendant Dr. Paz reschedule his group session "as the threats and harassment by Inmate Woodward had increased." (Id. at 5). Defendant Dr. Paz, however, "refused to take [ ] plaintiff serious[ly]." (Id.). On May 5, 2017, during the group therapy session, plaintiff asked defendant Jackson to seat him away from Inmate Woodward out of fear for his safety, but defendant Jackson refused. Inmate Woodward slipped out of his handcuffs and assaulted plaintiff during the session. (Id. at 5-6).

---

[1] Plaintiff explains that Inmate Woodward, in attempting to "gas" plaintiff, was "throwing urine and feces at [plaintiff]." (ECF No. 2 at 4).

During the assault, defendant Jackson "laughed and took his time to press the alarm." (Id. at 6). After the assault, plaintiff was escorted to the prison medical office. (Id.).

The Complaint includes three claims: Claim 1 (against defendants Dr. Paz, Graves, Burns, and Perez) and Claim 2 (against "defendants"): violations of the Eighth and Fourteenth Amendments based on defendants' failure to protect plaintiff from being assaulted by another prisoner (ECF No. 1 at 5-6); and Claim 3 (against "defendants"): violations of the First, Eighth and Fourteenth Amendments based on defendants' attempt "to cover the assault suffer[ed] by plaintiff due to their negligence, malicious acts and failure to protect." (Id. at 6).

In accordance with the mandate of the Prison Litigation Reform Act of 1995 ("PLRA"), the Court has screened the Complaint prior to ordering service for the purpose of determining whether the action is frivolous or malicious; or fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2). The Court's screening of the pleading under the foregoing statute is governed by the following standards. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); see also Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (in determining whether a complaint should be dismissed under the PLRA, courts apply the standard of Fed. R. Civ. P. 12(b)(6)). Further, with respect to a plaintiff's pleading burden, the Supreme Court has held that: "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. … Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted, alteration in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 668, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation

omitted)).

The Court is mindful that, because plaintiff is appearing *pro se*, the Court must construe the allegations of the Complaint liberally and must afford plaintiff the benefit of any doubt. See Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). Additionally, it is particularly important in a civil rights case filed by a *pro se* inmate to attempt to ascertain plaintiff's claims to protect his access to the courts. See Blaisdell v. Frappiea, 729 F.3d 1237, 1241 (9th Cir. 2013) (the rule that courts liberally construe filings by *pro se* litigants, especially in civil rights cases filed by inmates, "relieves *pro se* litigants from the strict application of procedural rules"); Pouncil v. Tilton, 704 F.3d 568, 575-76 (9th Cir. 2012) (the rule of liberal construction "protects the rights of *pro se* litigants to self-representation and meaningful access to the courts"); Alvarez v. Hill, 518 F.3d 1152, 1158 (9th Cir. 2008) (because a prisoner was proceeding *pro se*, "the district court was required to 'afford [him] the benefit of any doubt' in ascertaining what claims he 'raised in his complaint'") (alteration in original). In addition, the Court may not dismiss a claim because a *pro se* plaintiff has failed to set forth a complete legal theory supporting the claim alleged. See Johnson v. City of Shelby, 135 S. Ct. 346, 346, 190 L. Ed. 2d 309 (2014) (*per curiam*) (noting that the Fed. Rules of Civ. Proc. "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted"). That said, the Supreme Court has made it clear that the Court has "no obligation to act as counsel or paralegal to *pro se* litigants." Pliler v. Ford, 542 U.S. 225, 231, 124 S. Ct. 2441, 159 L. Ed. 2d 338 (2004). Further, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004).

After careful review of the Complaint under the foregoing standards, the Court finds that, as discussed in more detail below, the Complaint is deficient and must be dismissed with leave to amend. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (holding that a *pro se* litigant must be given leave to amend his complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment).

**If plaintiff desires to pursue this action, he is ORDERED to file an Amended Complaint no later than July 24, 2018, remedying the deficiencies discussed below.**

**Further, plaintiff is admonished that, if he fails to timely file an Amended Complaint or fails to remedy the deficiencies of this pleading as discussed herein, the Court will recommend that the action be dismissed without further leave to amend and with prejudice.[2]**

## DISCUSSION

### A. NAMING INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES

Plaintiff has named each defendant in both his or her individual and official capacities. The Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Id. at 166 (emphasis in original). Accordingly, plaintiff's claim against an officer in his or her official capacity is the same as a claim against his or her employer. To the extent that plaintiff may be purporting to state a claim against the California Department of Corrections and Rehabilitation ("CDCR") pursuant to Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the Supreme Court in Monell held that a local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694; see also Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) ("local governments are responsible only for their own illegal acts"). In order

---

[2] Plaintiff is advised that this Court's determination herein that the allegations in the Complaint are insufficient to state a particular claim should not be seen as *dispositive* of that claim. Accordingly, while this Court believes that you have failed to plead sufficient factual matter in your pleading, accepted as true, to state a claim to relief that is plausible on its face, you are not required to omit any claim or defendant in order to pursue this action. However, if you decide to pursue a claim in an Amended Complaint that this Court has found to be insufficient, then this Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately will submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to your right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

to state a claim arising from the execution of an entity's policy or custom, plaintiff must set forth factual allegations to show that the execution of a specific policy, ordinance, regulation, custom or the like of the prison was the "actionable cause" of any alleged constitutional violation. See Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1146 (9th Cir. 2012) ("a plaintiff must also show that the policy at issue was the 'actionable cause' of the constitutional violation, which requires showing both but-for and proximate causation").

An "official capacity" claim may not be premised on an isolated or sporadic incident. See, e.g., Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."); Thompson v. Los Angeles, 885 F.2d 1439, 1443-44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom."), overruled on other grounds, Bull v. City & County of San Francisco, 595 F.3d 964, 981 (9th Cir. 2010) (en banc). Here, plaintiff alleges that he unsuccessfully sought protection from prison staff based on another inmate's threat of violence, and that he was ultimately attacked by that inmate. Plaintiff further alleges that the prison staff took steps to cover up their failure to protect plaintiff from the assault. It is not clear, however, if plaintiff is alleging that defendants' alleged failure to protect him from inmate violence was in accordance with a specific prison policy or custom. For example, although plaintiff alleges that prison staff refused to intervene to protect him because, as certain staff told plaintiff, no assault had yet occurred, there are no allegations that this practice -- i.e., prison staff addressing inmate threats only after a "physical attempt" is committed -- was consistently and frequently employed and amounted to a specific prison policy or custom that was the "actionable cause" of a specific constitutional violation that plaintiff suffered. See Tsao, 698 F.3d at 1146.

**B.    CLAIM THREE**

With respect to Claim Three -- the alleged cover up -- the Complaint fails to comply with Federal Rule of Civil Procedure 8(a) and 8(d). Fed. R. Civ. P. 8(a) states:

6

> A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) **a short and plain statement of the claim showing that the pleader is entitled to relief**; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

(Emphasis added). Rule 8(d)(1) provides: "Each allegation **must be simple, concise, and direct**. No technical form is required." (Emphasis added). Although the Court must construe a *pro se* plaintiff's pleadings liberally, a plaintiff nonetheless must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what plaintiff's claims are and the grounds upon which they rest. See, e.g., Brazil v. United States Department of the Navy, 66 F.3d 193, 199 (9th Cir. 1995); McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991) (complaint must give defendants fair notice of the claims against them). If a plaintiff fails to clearly and concisely set forth allegations sufficient to provide defendants with notice of which defendant is being sued on which theory and what relief is being sought against them, the complaint fails to comply with Rule 8. See, e.g., McHenry v. Renne, 84 F.3d 1172, 1177-79 (9th Cir. 1996); Nevijel v. Northcoast Life Ins. Co., 651 F.2d 671, 674 (9th Cir. 1981). Moreover, failure to comply with Rule 8 constitutes an independent basis for dismissal of a complaint that applies even if the claims in a complaint are not found to be wholly without merit. See McHenry, 84 F.3d at 1179; Nevijel, 651 F.2d at 673.

Plaintiff in Claim Three alleges a violation of the First, Eighth and Fourteenth Amendments after "defendants attempted to cover the assault suffer[ed] by plaintiff due to their negligence, malicious acts and failure to protect." (ECF No. 1 at 6). In support, plaintiff makes numerous allegations, including: (1) "defendants threatened plaintiff not to file a staff complaint or to complain about the assault if he didn't want to pick up a staff assault charge and lose his property" (ECF No. 2 at 7); (2) "Dr. Paz threatened to remove the plaintiff from the EOP Level of Care if [plaintiff] attempted to file a staff complaint against him," and also threatened plaintiff that he would accuse him of asking Dr. Paz to bring drugs into the prison for him (id.); (3) at plaintiff's "602 hearing," defendant Graves threatened plaintiff with a weapon charge (id.); (4) plaintiff "attempted to file grievances for custody trying to cover up the attack and the threats by custody but

staff/defendants made more threats that caused the plaintiff to be afraid to file a 602 and fear that the defendants would carry out their threats and . . . he cease[d] his attempts to utilize the 602 process any further" (id. at 8); (5) defendants "attempted to cover up the assault by denying plaintiff medical care until [a prison doctor] ordered that plaintiff be seen by medical staff" (id.); (6) defendants "refused to file a report or a rules violation report against Inmate Woodward for the assault" because defendants did not want a "paper trail" that would reflect they failed to protect plaintiff from the assault (id.); and (7) defendants failed to file the required "832 Incident Report" in an attempt to cover up their failure to protect (id.).

Allegations that a defendant participated in a cover-up state a civil rights claim under Section 1983 only if the cover-up can be causally connected to a failure to obtain legal redress for the violation that was the subject of the cover-up. See Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 625 (9th Cir. 1988) (allegations of a cover up "may state a federally cognizable claim provided that defendants' actions can be causally connected to a failure to succeed in the present lawsuit. However, if plaintiff were to succeed in this suit, then his cover-up allegations would be mooted"). In order to allege such a claim, a plaintiff must allege that the cover-up actually precluded him from prevailing in a state or federal lawsuit against the wrongdoers. Delew v. Wagner, 143 F.3d 1219, 1222-23 (9th Cir. 1998). Thus, a cover-up claim is premature when, as here, the plaintiff's action seeking redress for the underlying violations remains pending in federal court. See id. at 1223; Karim-Panahi, 839 F.2d at 625 ("Because the ultimate resolution of the present suit remains in doubt, [petitioner's] cover-up claim is not ripe for judicial consideration."). Accordingly, at this time, plaintiff's claim alleging a cover-up in Claim Three must be dismissed without prejudice.

To the extent plaintiff in Claim Three intends to state a claim of retaliation against any defendant, an action taken in retaliation for the exercise of a First Amendment right is actionable under Section 1983. See Hines v. Gomez, 108 F.3d 265, 267 (9th Cir 1997); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). In particular, filing a grievance with prison officials is protected activity under the First Amendment. See Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). In the prison context, "a viable claim of First Amendment retaliation entails five basic elements:

8

(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (internal footnote omitted). The adverse action need not be an independent constitutional violation. Pratt, 65 F.3d at 806. "[T]he mere *threat* of harm can be an adverse action[.]" Brodheim, 584 F.3d at 1270 (emphasis in original). Additionally, with respect to factor (4), "a plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568 n.11.

Here, plaintiff makes several allegations involving retaliatory conduct, including: that defendants threatened to file a staff assault charge against plaintiff if he filed a complaint about the inmate assault; that Dr. Paz threatened to remove the plaintiff from the EOP Level of Care if plaintiff filed a staff complaint, and also threatened to falsely accuse plaintiff of asking for drugs; and that during a "602 hearing," defendant Graves threatened plaintiff with a weapon charge. (ECF No. 2 at 7). However, while plaintiff alleges that "defendants" threatened to charge plaintiff with assaulting a staff member if he filed a complaint, plaintiff fails to identify the specific individuals involved. (See ECF No. 2 at 7, 8). Plaintiff must provide facts identifying the particular defendant or defendants involved in any particular action that plaintiff alleges resulted in a violation of his rights. Moreover, with respect to plaintiff's allegation that defendant Graves threatened to issue a "weapon charge" against plaintiff, it is not specifically alleged what "protected conduct" plaintiff engaged in that resulted in the threat from defendant Graves. Additionally, to state any retaliation claim, plaintiff must allege that an adverse action, issued in reaction to plaintiff's engagement in a protected activity, caused a chilling effect, or alternatively, caused plaintiff to suffer "more than minimal" harm that satisfies the above five-factor test. See Robinson, 408 F.3d at 567-68.

**C.   REQUEST FOR RELIEF**

Next, the Court notes that plaintiff seeks the specific relief of "no retaliation." (ECF No. 1

at 7). To the extent plaintiff's "no retaliation" request amounts to a request for injunctive relief, plaintiff must demonstrate that a credible threat exists that he will again be subjected to the specific injury for which he seeks relief. See Kolendar v. Lawson, 461 U.S. 352, 355 n.3, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). A reasonable showing of a "sufficient likelihood" that plaintiff will again be injured is necessary. See City of Los Angeles v. Lyons, 461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983). Past exposure to harm is largely irrelevant when analyzing claims of standing for injunctive relief that are predicated upon threats of future harm. See O'Shea v. Littleton, 414 U.S. 488, 495-96, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."). Here, plaintiff fails to set forth any factual allegations to show the existence of a credible threat that he will again be subjected to adverse actions by any prison staff in retaliation for pursuing his claims.

************

**If plaintiff desires to pursue this action, he must file an Amended Complaint no later than July 24, 2018;** the Amended Complaint must bear the docket number assigned in this case; be labeled "Amended Complaint"; and be complete in and of itself without reference to the original Complaint, or any other pleading, attachment or document. Further, if plaintiff chooses to proceed with this action, plaintiff must use the blank Central District civil rights complaint form accompanying this order, must sign and date the form, **must completely and accurately fill out the form**, and must use the space provided in the form to set forth all of the claims that he wishes to assert in an Amended Complaint.

The Clerk is directed to provide plaintiff with a blank Central District civil rights complaint form.

**Further, plaintiff is admonished that, if he fails to timely file an Amended Complaint or fails to remedy the deficiencies of this pleading as discussed herein, the Court will recommend that the action be dismissed without further leave and with prejudice.**

/

In addition, if plaintiff no longer wishes to pursue this action, he may request a voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a). The clerk also is directed to attach a Notice of Dismissal form for plaintiff's convenience.

**IT IS SO ORDERED**.

DATED: June 26, 2018

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE